# United States Bankruptcy Court

## Eastern District Of Washington

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ANTHONY W. COURSON | ) Main Case Number: | 04-03686 |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| WELLS FARGO BANK, N.A., | ) **Adversary** | A04-00247 |
| A National Bank, | ) **Number:** | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| , | ) | |
| vs. | ) | |
| ANTHONY W. COURSON, aka | ) | |
| RANDALL'S II AUTO SALES, | ) | |
| STEPHANIE COURSON and | ) | |
| John Doe, Holders of Its | ) | |
| Security; husband and | ) | |
| wife and their marital | ) | |
| community, GESA CREDIT | ) | |
| UNION, SAFECO INSURANCE, | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| | ) **OPINION** | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter comes before the court upon motions for summary judgment.  The plaintiff Wells Fargo Bank, N.A. (hereinafter Wells Fargo) is suing Gesa Credit Union (hereinafter Gesa) and Safeco Insurance Company of America (hereinafter Safeco) for insurance proceeds arising from the damage and loss to Wells Fargo's collateral,

04-00247-JAR   Doc 260   Filed 06/24/09   Entered 06/24/09 14:14:13   Pg 1 of 29

a boat and trailer, at one time owned by the debtor Anthony Courson.

## **PROCEDURAL HISTORY**

This adversary proceeding relates to the bankruptcy case of Anthony Courson. The court has jurisdiction to decide the matter pursuant to 28 U.S.C. § 157(a). The parties have consented to the court entering a final judgment in this matter pursuant to 28 U.S.C. 157(c)(2). [AP #258].

The debtors Anthony and Stephanie Courson filed a Chapter 7 case. Wells Fargo instituted this adversary proceeding against the Coursons, alleging that they had disposed of Wells Fargo's collateral, a boat and trailer, without permission and without accounting for the proceeds. A judgment was rendered in this court against the Coursons for $37,874.89, which determined that the obligation was non dischargeable.

Subsequent to the entry of judgment against Coursons, Wells Fargo learned that the boat and trailer had been sold to Jeff Buxton. The sale to Buxton had been financed by Gesa and the collateral insured by Safeco. The collateral was destroyed and Safeco paid Gesa $29,200.00 for the loss.

Wells Fargo added Gesa and Safeco as parties defendants in this adversary proceeding to recover from them the insurance proceeds of Wells Fargo's collateral. Wells Fargo, Gesa and Safeco have all moved for summary judgment.

# FACTS AND PLEADINGS

1.  Anthony Courson purchased a boat and trailer on June 26, 2000.  He executed an installment sales contract as buyer with Randall's Auto Sales Inc. as seller, and this contract was assigned to First Security Bank.[1]

2.  The boat and trailer are subjects of Washington State Certificates of Ownership applied for July 24, 2000.  These certificates reflect "Tony Courson" registered owner "First Security Bank legal owner."[2]

3.  Wells Fargo alleges that it acquired First Security's interest in the Courson contract, and that it is the successor in interest to First Security's secured position on the boat and trailer.  The court could find no document or assignment in the record supporting this allegation.  Gesa has not conceded that Wells Fargo is the successor in interest of First Security Bank.[3]

4.  "Randall's" issued a "Vehicle Purchase Order" for the boat

---

[1] [AP #147-1 pg. 2-3]

[2] [AP #147-1 pg. 15-16]

[3] Gesa denied these allegations in its answer to Wells Fargo's Second Amended Complaint. [AP# 97 pg. 2, ¶s 2, 3 & 4].  Wells Fargo argues that Gesa subsequently admitted that Wells Fargo was the successor in interest of Security Bank by a statement in a brief filed by Gesa in support of summary judgment [AP# 139 pg. 2, ln 3].  Gesa argued in its memorandum in Response, that Wells Fargo has presented no evidence to support this allegation. [AP# 239 pg. 7, ln 21-25].  Gesa's counsel maintained this position at the initial oral argument of this summary judgment motion on March 24, 2009.  In a subsequent hearing on April 22, 2009, the court inquired of Wells Fargo where the evidence was that established its position as successor to Security Bank.  Wells Fargo's response to this inquiry [AP# 254] fails to provide such evidence.  For purposes of this decision only, the court will assume that Wells Fargo is able to prove that it is the successor of Security Bank and entitled to enforce the security interest at issue.

OPINION
06/24/09                                    3

and trailer dated January 21, 2003. The purchaser listed on the order was Jeff Buxton.[4] The boat and trailer identified in this purchase order is the same boat and trailer purchased by Courson and financed by Security Bank.

5. Buxton purchased the boat and trailer and the purchase was financed by Gesa Credit Union. Gesa's check issued to finance this purchase was made payable to "Jeff M. Buxton and Randalls" dated 2/07/03 in the sum of $34,024.00.[5] In this process, Buxton executed an "Open End Credit Plan Advance/Revolving Request" that includes a security agreement granting Gesa a security interest in the boat and trailer.[6] New certificates of title were not issued for the boat and trailer. A search of the Washington State registry system on September 24, 2007 reflects that the registered owner and the legal owner of the boat and trailer remain Tony Courson and First Security Bank respectively.[7]

6. About a year after Buxton purchased the boat and trailer he learned that there was no title for either. He contacted Gesa which advised him that "there wasn't a title."[8]

7. On May 6, 2004, Anthony Courson filed a Chapter 7 case with this court under cause #04-03686. Courson's voluntary petition is captioned "Anthony W. Courson, aka Randall's II Auto

---

[4][AP # 153-1 pg. 19]

[5][AP #153-1 pg. 33]

[6][AP #153-1 pg. 29-31]

[7][AP #147-2 pg. 38-39].

[8][AP #153-1 pg. 6, dep pg. 18 ln 25 through pg. 19 ln 25].

OPINION
06/24/09                                    4

Sales..."[9]  His statement of affairs reflects he received a

substantial income from "Randall's" in the 3 years preceding the

filing of his bankruptcy.[10]  Wells Fargo's own credit recovery notes

reflect that Courson had an ownership interest in Randall's during

the period of the events in question.[11]  It is unclear what

relationship Courson had with Randall's at the time of his purchase

of the boat and trailer in 2000, the sale of the boat to Buxton, or

when he filed for bankruptcy.

8.  On October 27, 2004, Wells Fargo filed this adversary

proceeding against "Anthony W. Courson, aka Randall's II Auto

Sales, Stephanie Courson and John Doe, Holders of its security;

husband and wife and their marital community" under cause #04-

03686.  The complaint objects to the discharge of Anthony Courson's

debt to Wells Fargo on the grounds that he wrongfully disposed of

the boat and trailer without paying off Wells Fargo, creating a non

dischargeable debt pursuant to 11 U.S.C. § 523 (a)(6).

9.  On May 30, 2005, the boat was run aground on the Columbia

River and severely damaged.[12]

10.  At the time of the accident the boat and trailer were

insured under Safeco Insurance policy #M1407996.  The insured on

the policy was Jeffrey M. Buxton and the loss payee was Gesa Credit

---

[9][MC #1]

[10][MC # 6 pg. 1]

[11][AP# 255 pg. 4; AP# 240 pgs. 12 & 15].

[12][AP #147-2 pg. 23-26]

OPINION
06/24/09                              5

Union.  The policy ran from May 28, 2005 through May 28, 2006.[13]

11.  As a result of the accident, Safeco paid $28,000 and $1,200 respectively for the boat and trailer to Gesa Credit Union by checks dated July 14, 2005 and July 26, 2005.[14]

12.  On October 24, 2005, this court entered a judgment against the defendants Anthony and Stephanie in the sum of $37,874.89 and excepted this judgment from discharge.[15]

13.  On December 6, 2006, Wells Fargo moved to reopen this adversary proceeding and add two additional defendants, Gesa and Safeco,[16] and subsequently filed a Second Amended Complaint adding Gesa and Safeco as defendants.[17]

## **DISCUSSION**

I.  **WELLS FARGO VS. GESA**

A.  <u>DID WELLS FARGO HAVE A SECURITY INTEREST IN THE INSURANCE MONEY PAID TO GESA?</u>

A fundamental premise of Wells Fargo's complaint is that it holds a security interest in the money paid by Safeco to Gesa as a result of damage to the boat and trailer.  Wells Fargo bases this claim on the installment sale contract entered into between Anthony Courson, buyer, and Randall's Auto Sales Inc., seller, and assigned

_____

[13][AP #147-2 pg. 1-20]

[14][AP #134-1 pg. 2 & 4]

[15][AP #61]

[16][AP #65]

[17][AP #69]

OPINION
06/24/09                          6

to First Security Bank.[18]  "Tony Courson" was the registered owner of this boat and trailer and First Security Bank was the legal owner shown on the title.[19]  Wells Fargo alleges that it is the successor in interest to Security Bank.

Wells Fargo claims a perfected security interest in the boat and trailer.  It asserts that its security interest extends to the proceeds of its collateral and that those proceeds include the insurance checks made payable to Gesa for the loss of the boat and trailer.  Wells Fargo seeks recovery of that money from Gesa, which held only an unperfected security interest in the boat and trailer. Wells Fargo assets it has priority to Gesa's claim to the money paid by Safeco and that Gesa has converted Wells Fargo's property.

The Courson/First Security security agreement dates from June 26, 2000.  The then applicable version of Washington's Uniform Commercial Code provided:

> "Proceeds"; secured party's rights on disposition of collateral
>
> (1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.  <u>Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement</u>.  Any payments or distributions made with respect to investment property collateral are proceeds.  Money, checks, deposit accounts, and the like are "cash proceeds."  All other proceeds are "non-case proceeds."
>
> (2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the

---

[18][AP #147-1 pgs. 2-3]

[19][AP #147-1 pgs. 15-16]

secured party in the security agreement or
                    otherwise, and also continues in any identifiable
                    proceeds including collections received by the
                    debtor.  (Emphasis added)

RCWA 62A.9-306 (West 1999).

     In interpreting the underscored language, in a situation like
ours where there are two different security agreements, the first
question is which security agreement is the applicable security
agreement?  Since Wells Fargo is seeking to enforce its security
interest, it follows that the provision must be referring to the
security agreement Wells Fargo is seeking to enforce.  Here
Safeco's checks were payable to Gesa.  Gesa is not a party to the
Security Bank/Wells Fargo/Courson security agreement.  Therefore
those checks were not proceeds of Security Bank/Wells Fargo's
collateral by definition.

     That is not the end of the analysis.  Washington State adopted
a revised version of U.C.C. Article 9, effective July 1, 2001.
This revised statute deals with proceeds in its definitional
section R.C.W. 62A.9A-102 as follows:

          (64) "Proceeds," except as used in RCW 62A.9A-609(b),
          means the following property:

          (A) Whatever is acquired upon the sale, lease, license,
          exchange, or other disposition of collateral;

          (B) Whatever is collected on, or distributed on account
          of, collateral;

          (C) Rights arising out of collateral;

          (D) To the extent of the value of collateral, claims
          arising out of the loss, nonconformity, or interference
          with the use of, defects or infringement of the rights
          in, or damage to, the collateral; or

          (E) To the extent of the value of collateral and to the

OPINION
06/24/09                              8

1     <u>extent payable to the debtor or the secured party</u>

2     <u>insurance payable by reason of the loss</u> or nonconformity

3     of, defects or infringement of rights in, <u>or damage to,</u>

4     <u>the collateral</u>.  (Emphasis added)

5          Since the events relevant to this case both precede the

6     adoption of these statutory changes (the creation and perfection of

7     the Security Bank/Wells Fargo/Courson security interest) and

8     follows its adoption (the creation of the Gesa/Buxton security

9     interest, the damage to the collateral, and the payment by Safeco),

10    what version of the statute is applicable?  Section R.C.W. 62A. 9A-

11    702(a) provides: "Article 62A.9A R.C.W. applies to a transaction or

12    lien within its scope even if the transaction or lien was entered

13    into or created before July 1, 2001."  It is the new provision

14    R.C.W. 62A.9A-102(64)(E), which applies to this case.

15         The new language talks of insurance payable "to the debtor or

16    the secured party."  R.C.W. 62A.9A.102(64)(E).  The questions

17    remain: which debtor (Courson or Buxton) and which secured party

18    (Security Bank/Wells Fargo or Gesa)?

19         The revised Article 9 defines debtor as follows:

20         (28) "Debtor" means:

21         (A) A person having an interest, other than a security
           interest or other lien, in the collateral, whether or not
22         the person is an obligor;

23         (B) A seller of accounts, chattel paper, payment
           intangibles, or promissory notes; or
24
           (C) A consignee.
25
      R.C.W. 62A.9A.102(28).
26

27         This definition clearly applies to Buxton, "a person having an

28    OPINION
      06/24/09                         9

interest... in the collateral, whether or not the person is an obligor." Although not an obligor of Security Bank/Wells Fargo, Buxton clearly had an interest in the boat and trailer. Buxton is a "debtor" under the revised code. This analysis is consistent with the Uniform Commercial Code Comments which provides in part:

> "By including in the definition of "debtor" all persons with a property interest (other than a security interest in or other lien on collateral), the definition includes transferees of collateral, whether or not the secured party knows of the transfer or the transferee's identity." U.C.C. § 9-102, cmt. 2(a)(2005).

Buxton fits this definition of debtor in regard to the Security Bank/Wells Fargo security interest. If the Safeco checks were payable to Buxton, they would qualify as proceeds of Security Bank/Wells Fargo's collateral pursuant to R.C.W. 62A.9A-102(64)(E). The Safeco checks are not payable to Buxton but to Gesa alone.

The process of working through the language of Revised Article Nine as adopted in Washington, demonstrates that at least under the Revised Article Nine, the definition of a term might differ depending on the factual context. With this in mind, we look to see whether the Revised Article's definition of "secured party" changes when applied to the facts of our case.

The Revised Article Nine defines a secured party as follows:

(72) "Secured Party" means:

(A) <u>A person in whose favor a security interest is created or provided for under a security agreement</u>, whether or not any obligation to be secured is outstanding;

OPINION
06/24/09                    10

(B) person that holds an agricultural lien;

(C) A consignor;

(D) A person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold;

(E) A trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for; or

(F) A person that holds a security interest arising under RCW 62A.2-401, 62A.2-505, 62A.2-711(3), 62A.2A-508(5), 62A.4-210, or 62A.5-118.

RCW 62A.9A-102(72), (emphasis added).

Sub section (A) ties the definition to a "security agreement." A security agreement is defined as follows:

(73) "Security agreement" means an agreement that creates or provides for a security interest.

R.C.W. 62A.9A-102(73).

The secured party is defined in reference to a specific security agreement. The security agreement creating the security interest, which Wells Fargo is attempting to enforce in this litigation, is the Courson/First Security Bank security agreement. When interpreting who is "the secured party" referred to in R.C.W. 62A.9A-102(64)(E), the secured party identified must be Wells Fargo in order for it to prevail. Under that definition the insurance payable by loss of the collateral must be payable to "the secured party" to qualify the insurance proceeds as "proceeds" of Wells Fargo's collateral. The Safeco checks were not payable to Wells Fargo, but to Gesa. Therefore those checks do not qualify as "proceeds" of Wells Fargo's collateral under R.C.W. 62A.9A-102(64)(E). Since the checks are not proceeds of Wells Fargo's

collateral, Wells Fargo has no priority over Gesa's admittedly imperfected security interest in the checks.

Gesa has a security interest, albeit unperfected, in the Safeco money as a result of its security agreement with Buxton. Its security interest prevails over Wells Fargo's claim because Wells Fargo has no interest in that money under the Washington Revised U.C.C. definition of proceeds.

B. <u>DID WELLS FARGO HAVE AN EQUITABLE INTEREST IN THE MONEY PAID TO GESA?</u>

Wells Fargo asserts that it had an equitable lien in the money paid to Gesa. The court must decide if such an equitable lien exists or existed in the money paid to Gesa.

1. <u>What is an equitable lien?</u>

The Washington Supreme Court, in the case of <u>Nelson et al. v. Nelson Neal Lumber Co. et al</u>, 171 Wash. 55, 17 P.26 626 (1932) said:

> [I]t becomes proper to define the nature of an equitable lien.
>
> 'It is a right of a special nature over property, constituting a charge or incumbrance thereon, so that the property itself may be proceeded against in an equitable action, and be either sold or sequestered upon proof of a contract out of which the lien could grow, or of a duty on the part of the holder of the property, so as to give the other party a charge or lien upon it. *** While such lien may be thus susceptible of enforcement, it is, nevertheless, but a mere floating and ineffective equity until such time as a judgment or decree is rendered actually subjecting the property to the payment of the debt or claim.' <u>Langford v. Fanning</u> (Mo. App.) 7 S.W.(2d) 726, 728.
>
> 'An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. *** It is neither a debt nor a right of property, but a remedy for a debt. It is simply a right of a special

nature over the property which constitutes a charge or incumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.' <u>Kukuk v. Martin</u>, 331 Ill. 602, 163 N.E. 391, 392.

171 Wash. at 60-61, 17 P.2d at 628.

Thus, an equitable lien is not a right in property but rather a remedy for debt. It is ineffective until a judgment is rendered declaring the lien.

2. <u>What conditions support the declaration of an equitable lien?</u>

a. <u>Types of equitable lien</u>

The Washington Supreme Court has recently restated the principles upon which an equitable lien can be declared.

> An equitable lien "will be enforced in equity against specific property, though there is no valid lien at law; equity imposes liens either to carry out the intention of the parties to give a security or to prevent injustice, regardless of the intent." Henry L. McClintock, <u>Handbook of the Principles of Equity</u> § 118, at 319 (2d ed. 1948). Equitable liens fall into two categories: (1) "[t]hose created to give effect to an intention of the parties to secure payment of an obligation by subjecting to the payment of an obligation specified property, such as equitable mortgages and equitable pledges," and (2) those created by the court to protect a party against inequitable loss, regardless of intent. *Id.*

<u>Sorenson v. Pyeatt et al</u>, 158 Wash.2d 523, 530 n.9, 146 P.3d 1172, 1175 n.9 (2006).

The first category of equitable liens secures the intentions of the parties. Wells Fargo and Gesa did not intend to deal with each other; therefore, they had no mutual intentions to be enforced. An equitable lien can not be declared based on this

OPINION
06/24/09                    13

category of equitable liens.

The second category of equitable liens protects against an inequitable loss. It is under this category that Wells Fargo seeks a lien.

b. <u>Limitations on Equitable Liens</u>

The seminal Washington case on the issue of equitable liens is <u>Falconer v. Stevenson</u>, 184 Wash. 438, 51 P.2d at 619 (1935). It speaks of the limits of the remedy:

> But the doctrine of equitable lien has its prescribed boundaries as well as that of subrogation; it is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor any more than, as an illustrious law writer said, to the measure of his foot.

184 Wash. at 442, 51 P.2d at 619.

The appellants in <u>Sorenson</u> urged the court to adopt a more expansive interpretation. The court declined this invitation saying in part:

> [I]t is a well established rule that an equitable remedy is an extraordinary, not ordinary form of relief. Henry L. McClintock, <u>Handbook of the Principles of Equity</u> § 22, at 47 (2d ed. 1948). A court will grant equitable relief only when there is a showing that a party is entitled to a remedy and the remedy at law is inadequate. <u>Orwick v. City of Seattle</u>, 103 Wash.2d 249, 252, 692 P.2d 793 (1984).

<u>Sorenson v. Pyeatt</u>, 158 Wash.2d at 531, 146 P.3d at 1176.

The <u>Sorenson</u> decision refers to a number of circumstances where equitable liens can be imposed including securing property settlement, alimony payments, the award of community property, and imposing an equitable lien where defendant purchased a property with money embezzled from the plaintiff. <u>Ibid.</u> 158 Wash. at 536, 146 P.3d at 1177. <u>Sorenson</u> stands for the proposition that the

OPINION
06/24/09                                    14

1  equitable lien remedy is a narrow one to be applied only in certain
2  limited and recognized circumstances.

3      c.  Equitable Liens in Insurance Proceeds

4      One of the areas where Washington courts have recognized
5  equitable liens as an appropriate remedy deals with insurance
6  proceeds where the first party has covenanted to insure property
7  against loss for the benefit of a second party but has taken
8  insurance only in his own name.  In such cases the courts will
9  impose an equitable lien on the insurance proceeds for the benefit
10 of the second party.  Wells Fargo has cited such a case, Cook et al
11 v. Commellini et al., 196 Wash. 125, 82 P.2d 143 (1938), in support
12 of its position.  A number of other Washington cases recognize the
13 propriety of imposing an equitable lien in this limited
14 circumstance.  Geer v. Tonnon, 137 Wash.App. 838, 155 P.3d 163
15 (2007); Nelson v. Nelson Neal Lumbar Co., 171 Wash. 55, 17 P.2d 626
16 (1932), Robbins v Milwaukee Mechanics' Ins Co., 102 Wash. 539, 173
17 P.634 (1918).

18     Here Wells Fargo seeks to expand the concept of equitable
19 liens beyond the limited scope of the facts in the cases above
20 cited.  It is not seeking to establish an equitable lien against
21 Courson its debtor, who had covenanted to keep the collateral
22 insured for the benefit of First Security Bank.  Nor does it seek
23 to establish an equitable lien against Buxton, Courson's successor
24 in interest, who might arguably be bound by the covenant to insure

25
26
27
28 OPINION
   06/24/09                        15

for the benefit of Wells Fargo.[20]  It did not sue Buxton, rather it seeks to impose and enforce an equitable lien against Gesa, a party with which it did not deal.

    d.  <u>Can equitable liens be enforced against third parties?</u>

    The attempt to extend the doctrine of equitable lien beyond the narrow confines of existing law was explicitly rejected in the case of <u>Sorenson v. Pyeatt</u>.  There the court in rejecting a plea to "step outside the parameters" of the existing case law said:

> It must be kept in mind that an equitable lien is a remedy for debt determined to be owed in law. See <u>Ellensburg</u>, 66 Wash.App at 252 835 P.2d 225 (citing *Nelson v. Nelson Neal Lumber Co.,* 171 Wash. 55, 61, 17 P.2d 626 (1932)).  In each equitable lien case brought to our attention, an equitable lien was imposed only upon the property or interest owned by the person incurring the debt.

<u>Sorenson v. Pyeatt</u>, 158 Wash.2d at 537, 146 P.3d at 1178-1179.  The court then continued:

> In sum, the Lenders have not provided this court with authority which establishes that a Washington court may impose an equitable lien upon the property of a third party in order to satisfy a judgment entered against another person who has been determined to legally owe the debt.  What is more, applying general equity principles, we do not see how we would be preventing an injustice by allowing the legal rights of Sorenson in this case to be cut down in order to provide the Lenders a "meaningful" remedy for Barbara Pyeatt's fraudulent conduct.

<u>Ibid.</u>, 158 Wash.2d at 538, 146 P.3d at 1179.

    Tony Courson is the person that owes the debt to Wells Fargo. Wells Fargo is seeking to impose and enforce an equitable lien

---

[20]<u>Greer v. Tonnon</u>, 137 Wash. App. at 848, 155 P.3d at 168; <u>Cook v. Commellini</u>, 196 Wash.125, 82 P.2d 143; <u>Robbins v. Milwaukee Mechanics' Ins. Co.</u>,102 Wash. at 542, 173 P.at 635 (1918)

OPINION
06/24/09            16

against Gesa, a party not liable for Courson's debt. Applying _Sorenson_, Wells Fargo is not entitled to an equitable lien against Gesa, unless some general equity principle should be invoked to prevent an injustice.

    e.  <u>The relative equities between the parties</u>

      Security Bank/Wells Fargo financed Courson's purchase of a boat and trailer from Randall's and perfected its security interest. Courson had some interest in, or position with, Randall's. Randall's sold the Courson boat and trailer to Buxton, who financed the purchase through Gesa, which took a security interest in the collateral although that security interest was not perfected. Neither Buxton nor Gesa were aware at the time that the boat and trailer were First Securities/Wells Fargo's collateral. Buxton, and then Gesa, learned about the title problem on the collateral about a year after the purchase. Buxton insured the boat and trailer with Safeco and made Gesa the loss payee on the policy. The boat was destroyed and Safeco paid Gesa for the loss pursuant to the policy. Only after the loss was paid did Safeco learn of Wells Fargo's interest.

      Wells Fargo, Buxton and Gesa are all innocent victims of Courson's misdeeds. It is not clear why equity would intervene to benefit one innocent party against another. Wells Fargo argues that Gesa was somehow negligent in the transaction and, therefore, the loss should fall on it. On facts much more egregious, in _Sorenson v. Pyeatt_, the court refused to impose an equitable lien on Sorenson's property despite the fact that she had participated in activity that amounted to a fraudulent transfer of the property

1  to avoid creditors and possibly even drug enforcement officials.

2  158 Wash.2d at 528, 146 P.3d at 1174. If such conduct did not

3  justify imposition of an equitable remedy, the relatively innocent

4  action of Gesa in this case does not support an equitable remedy.

5       f.  <u>Is there an adequate remedy at law?</u>

6      The <u>Sorenson</u> court discusses this requirement as follows:

7  > [I]t is a fundamental maxim that equity will not
> intervene where there is an adequate remedy at law.
8  > <u>Accord Orwick</u>, 103 Wash.2d 249, 692 P.2d 793; McClintock,
> *supra*, § 22, at 48; 30A C.J.S. *Equity* § 25 (1992). In
9  > determining whether to exercise equitable powers,
> Washington courts follow the general rule that equitable
10 > relief will not be accorded when there is a clear,
> adequate, complete remedy at law. <u>City of Lakewood v.</u>
11 > <u>Pierce County</u>, 144 Wash.2d 118, 126, 30 P.3d 446 (2001).
> Furthermore, we think it a good equity policy that the
12 > person against whom the legal remedy is sought and
> authorized should be the same person against whom the
13 > equitable remedy is sought. <u>Accord</u> McClintock, *supra*, §
> 23; 30A C.J.S., *supra*, § 94.
14
15 158 Wash.2d at 543, 146 P.3d 1182.

16 The respondents in <u>Sorenson</u> had argued that their remedy at law

17 against Pyeatt was inadequate because Pyeatt did not have enough

18 funds and property to pay the judgment. The court dismissed this

19 argument observing that the remedy at law was valid, even if the

20 likelihood of payment was small. <u>Ibid.</u>, 158 Wash.2d at 544, 146

21

22 P.3d 1182.

23     In this case, Wells Fargo has a valid remedy at law against

24 Courson in this court's non-dischargeable judgment against him.

25

26 Its questionable collectability does not alter that fact. In any

27 event, Wells Fargo seeks an equitable remedy against Gesa, who is

28 OPINION
06/24/09                   18

not liable at law, and such equitable relief is not available under <u>Sorenson</u>.

    C.   <u>WELLS FARGO'S OTHER ARGUMENTS FOR RELIEF</u>

    Wells Fargo in its pleading refers to a number of other remedies which entitle it to relief against Gesa.

    1.  <u>Conversion</u>

    Wells Fargo asserts that Gesa converted the proceeds of its collateral. Conversion has been defined by Washington courts as follows:

> "'A conversion is a willful interference with a chattel without lawful justification, whereby a person entitled thereto is deprived of the possession of it.'" <u>Paris Am. Corp. V. McCausland</u>, 52 Wash.App. 434, 443, 759 P.2d 1210 (1988) (quoting <u>Olin v. Goehler</u>, 39 Wash.App. 688, 693, 694 P.2d 1129, *review denied*, 103 Wash.2d 1036 (1985)). When a debtor transfers collateral subject to a perfected security interest, the secured party may commence an action against the purchaser for conversion. See, e.g., <u>Washington State Bank v. Medalia Healthcare, L.L.C.</u>, 96 Wash.App. 547, 550-52, 984 P.2d 1041 (1999).

<u>Western Farm Services Inc. v. Olsen</u>, 151 Wash.2d 645, at 648 n.1, 90 P.3d 1053, at 1054 n.1 (2004).

    The problem with this argument is that Wells Fargo did not have a perfected security interest in the insurance proceeds pursuant to R.C.W. 62A.9A.102 (64)(E).

    If Wells Fargo had been successful in establishing an equitable lien that would not be enough to support an action for conversion. <u>Greer v. Tonnon</u>, 137 Wash.App. at 846 n.5, 155 P.3d at

OPINION
06/24/09                19

168 n.5 (2007).

Wells Fargo has no cause of action for conversion against Gesa.

2. <u>Replevin</u>

In order for Wells Fargo to prevail on a claim against Gesa for replevin it would have to prove that it was the owner or held a security interest in the Safeco money, which was being wrongfully withheld. R.C.W. 7.64.020(2)(a) & (b). To prevail, Wells Fargo must rely on the strength of its own security interest or right to possession. <u>Graham v. Notti</u>, 147 Wash.App. 629, 635, 196 P.3d 1070, 1072 (2008). Since Wells Fargo has no security interest in the Safeco insurance proceeds, nor right to possession of them, it is not entitled to replevin against Gesa.

3. <u>Execution</u>

A precondition for issuance of an execution is a judgment at law or at equity. Since Wells Fargo has neither against Gesa it is not entitled to this remedy.

D. <u>SUMMARY: WELLS FARGO v. GESA</u>

Wells Fargo had no security interest in the Safeco money paid to Gesa. It is not entitled to an equitable lien, actions for conversion or replevin, nor for execution against Gesa. Wells

OPINION
06/24/09                              20

Fargo's complaint against Gesa should be dismissed with prejudice.

II. **WELLS FARGO v. SAFECO**

When Buxton purchased the boat and trailer, and Gesa financed Buxton's purchase, both parties were unaware of the existing security interest. Gesa took a security interest in the boat and trailer. Pursuant to his agreement with Gesa, Buxton purchased insurance from Safeco to protect in case of loss of the collateral. The policy named Gesa as loss payee in case of damage to or destruction of the collateral. Both Buxton and Gesa subsequently learned that the boat and trailer were the subject of a competing security interest. The boat was destroyed in an accident. A claim was made on the policy and Safeco paid Gesa $29,200.00 for loss of the boat and trailer. After paying Gesa, Safeco discovered in the course of attempting to obtain the certificates of title and possession of the damaged hulk and trailer that the title was contested. Safeco never acquired title or possession. Wells Fargo sued Safeco for the insurance proceeds paid to Gesa.

A. The Contract, Insurance Law and Regulations

Buxton purchased a policy of insurance from Safeco protecting him from loss or damage to the boat and trailer. Gesa was named as loss payee on the policy. Safeco had no contractual relationship

OPINION
06/24/09                              21

with Wells Fargo.  Buxton, Gesa and Safeco did not intend Wells Fargo to be a beneficiary under the insurance contract.

The law in Washington has long been established that property insurance is a personal contract and does not run with the property itself.  As the court said in <u>Davis v. Oregon Mutual Insurance Co.</u>, 71 Wash.2d 579, 580, 429 P.2d 886, 887 (1967), in a case dealing with fire insurance:

> The rule is that a policy of fire insurance is a personal contract and does not run with the land, its purpose being not to insure property against fire, but to insure the owner of the property against loss by fire. Fireman's Fund Ins. Co. v. Devonshire, 170 Wash 207, 16 P.2d 202 (1932); 44 C.J.S. Insurance s 224 (1945).  As stated in 1 Couch, Insurance s 1.7, at 33 (2d ed. 1959):

> (A)n assignment or conveyance of the property does not transfer any rights with respect to the insurance, unless the insured makes an express assignment thereof, with the insurer's consent, or unless by express stipulation of the parties it is made to run with the subject matter, or the contract is so framed as to attach the risk inseparably to the property, as where the insurance is on account of the 'owners,' or for whom it may concern, or where the loss is payable to the 'bearer.'

See also <u>Greer v. Tonnon</u>, 137 Wash.App. 838, 849-850, 155 P.3d 163, 169 (2007).  Wells Fargo is neither an insured nor a beneficiary under the terms of the Safeco policy. No contractual relationship exists between it and Safeco.

Wells Fargo argues that this rule has been modified by the adoption of WAC sections 284-21-010 and 284-21-990.  These regulations proscribe uniform terms for the "Loss Payable

OPINION
06/24/09                              22

Endorsement" applicable to property insurance in the State of Washington. This uniform endorsement provides in pertinent part:

> 1. Loss or damage, if any, under this policy shall be payable first to the loss payee or mortgagee (hereinafter called secured party), and, second, to the insured, as their interests may appear; Provided, That, upon demand for separate settlement by the secured party, the amount of said loss shall be paid directly to the secured party to the extent of its interest.

WAC 284-21-990 (2009).

Wells Fargo asserts that, pursuant to this regulation, it is the "secured party" referred to in the endorsement because it has a perfected security interest in the boat and trailer.

The regulation however does not mention a perfected security interest. Rather it refers to "the loss payee or mortgagee (hereinafter called secured party)." The loss payee on the Safeco policy is Gesa. Gesa is also a mortgagee/secured party in the collateral, and it is immaterial that its security interest may not have priority over Wells Fargo. Buxton, the purchaser of the insurance, benefitted from the payment to Gesa for the loss of the collateral partially satisfying Buxton's obligation to Gesa. This is what Buxton contracted for with Safeco. The loss payable endorsement language does not add Wells Fargo as a party to the contract or a beneficiary thereto.

Wells Fargo next argues that the Washington Administration

OPINION
06/24/09                          23

1  Code provisions found in the "Trade Practice Unfair Settlement

2  Practices" chapter, WAC 284-30, supports its claims against Safeco.

3  These regulations were promulgated by the Washington State

4  Insurance Commissioner pursuant to the authority granted in R.C.W.

5  48.30.010 to deal with unfair or deceptive practices.[21]

6

7      Wells Fargo categorizes itself as a "first party claimant" as

8  defined in these regulations.  This term is defined in WAC 284-30-

9  320 as follows:

10                          . . .

11          (3) "First party claimant" means an individual,
            corporation, association, partnership or other legal
12          entity asserting a right to payment under an insurance
            policy or insurance contract arising out of the
13          occurrence of the contingency or loss covered by such
            policy or contract;

14

15  Wells Fargo argues on the basis of this provision that it is

16  asserting a right to payment under the Buxton/Gesa/Safeco policy;

17  therefore it is a "first party claimant," entitled to sue Safeco.

18  Wells Fargo's interpretation would allow anyone who asserted any

19  claim for payment under an insurance policy status as a "first

20  party claimant."  This argument gives too expansive an

21  interpretation to the WAC provision.

22

23      The definition "first party claimant" is found in the

24  Washington Administrative Code chapter 284-30 "Trade Practices

25

26  _____

27      [21]WAC 284-30-300 (2009)
   OPINION
28  06/24/09                    24

Unfair Settlement Practices."  A review of the provisions in this chapter that use the term "first party claimant" all deal with the handling of insurance claims.[22]  There is no suggestion in these provisions that they expand the parties to the insurance contract or create a new cause of action on the policy such as urged by Wells Fargo.

WAC 284-30-320, the section in which the term "first party claimant" is defined, includes the following additional definition:

(8) "Third party claimant" means an individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of an insurer.

The regulatory scheme contained in WAC chapter 284-30, shows that it is defining claims settlement practices which might be unfair or deceptive.  The regulations distinguish between claims brought by "first party claimants" who are parties to the insurance contract, and "third party claimants" who are asserting a claim against a party insured under the policy or contract.

Applying these definitions to Wells Fargo's position, it appears that Wells Fargo is not "asserting a right to payment under

---

[22]Misrepresentation of Policy Provisions, WAC 284-30-350 (2009); Failure to Acknowledge Pertinent Communications, WAC 284-30-360 (2009);  Standards for Prompt, Fair and Equitable Settlements Applicable to All Insurers, WAC 284-30-380 (2009).

OPINION
06/24/09                           25

an insurance policy or contract" but is asserting a claim against Gesa an entity insured under the policy. Wells Fargo, rather than qualifying as a "first party claimant," is a "third party claimant" under these WAC definitions. This categorization might entitle Wells Fargo to different treatment in the settlement of insurance claims but that does not elevate it to the status of a party that can sue directly on the insurance contract.

Wells Fargo complains that Safeco has engaged in unfair and deceptive practices as defined in R.C.W. § 48.10.030 and WAC 284-30-330(7).[23] Specifically Wells Fargo alleges that "it is an unfair practice to 'compel insured to institute litigation to obtain amounts due'" and that Safeco acted in bad faith in dealing with Wells Fargo in this matter.[24]

These allegations are not well founded. Wells Fargo is not an insured under the Safeco policy or pertinent insurance regulations. As a third party claimant it has no direct rights of action against

---

[23]WAC 284-30-330. Specific unfair claims settlement practices defined.
The Following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims:
. . .
(7) Compelling insureds to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings

[24][AP #69 pg 6-7]

OPINION
06/24/09                                        26

Safeco for Consumer Protection Act or Unfair Practice violations.

Tank v. State Farm Fire and Casualty Co., 105 Wash.2d 381, 392, 715 P.2d 1133, 1141 (1986).

    B.    Tort

    1.    Negligence

    Wells Fargo asserts that Safeco was negligent when it paid Gesa the insurance proceeds without first checking the title of the collateral.  Perfection of a security interest on the title of collateral does not provide an insurer notice of that interest. International Harvester Credit Corporation v. Valdez, 42 Wash.App. 189, 195, 709 P.2d 1233, 1236 (1985).  It is not necessary for an insurer to conduct a title search before settling an insurance claim.  Chrysler Credit Corp. v. Smith, 434 Pa.Super.429, 438, 643 A.2d 1098, 1102 (1994); Judah AMC & Jeep, Inc. v. Old Republic Insurance Co., 293 N.W.2d 212, 214 (Iowa 1980).  Safeco had no duty to search the title records before paying Gesa's claim on the policy.

    2.    Conversion

    Wells Fargo asserts that Safeco converted Wells Fargo's property when it paid Gesa.  This court has ruled that, Wells Fargo did not have a security interest in the money paid by Safeco to

04-00247-JAR   Doc 260   Filed 06/24/09   Entered 06/24/09 14:14:13   Pg 27 of 29

Gesa. R.C.W. 62A.9A-102(64)(E). Safeco could not have converted Wells Fargo's property.

Wells Fargo also argues that it had an equitable lien on the money paid to Gesa. This court has ruled in this decision that Wells Fargo did not have an equitable lien against Gesa. The reasoning on that issue is equally applicable to Wells Fargo's claim of an equitable lien against Safeco. Wells Fargo did not have an equitable lien on the money paid by Safeco to Gesa. Even if an equitable lien had been proven, it would not support an action for conversion against Safeco. Greer v. Tonnon, 137 Wash.App at 846 n.5, 155 P.3d at 168 n.5 (2007).

C. Replevin

To prevail on this theory, Wells Fargo must prove Safeco has in its possession Wells Fargo's property and is wrongfully withholding that property. R.C.W. 7.64.020(2)(a) & (b). Safeco does not have possession of the money at issue, it has been paid to Gesa. In any event, Wells Fargo had no security interest in the money at issue. R.C.W. 62A.9A-102(64)(E). Wells Fargo is not entitled to replevin against Safeco.

D. Execution

Wells Fargo has no judgment against Safeco, therefore its

request for a writ of execution should be denied.

    E.    SUMMARY: WELLS FARGO v. GESA

    Wells Fargo had no security interest in the money paid by Safeco to Gesa.  Safeco did not violate any insurance law or regulations in paying the Gesa claim.  Wells Fargo had no equitable lien in the insurance proceeds.  Wells Fargo's action for conversion replevin or execution against Safeco should be denied. Wells Fargo's complaint against Safeco should be dismissed with prejudice.

## **CONCLUSION**

    Wells Fargo's motions for summary judgment against Gesa and Safeco should be denied.  Gesa's and Safeco's motions for summary judgment against Wells Fargo should be granted.  Wells Fargo's complaint against Gesa and Safeco should be dismissed with prejudice.

                    Done this 24 day of June, 2009


                    _____
                    JOHN A. ROSSMEISSL
                    BANKRUPTCY JUDGE